J-S19037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JARED LAURELL HONTZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COURTNEY MARIE HONTZ | : | |
| | : | |
| Appellant | : | No. 930 MDA 2023 |

Appeal from the Judgment of Sentence Entered April 25, 2023
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): 202210795

BEFORE:   DUBOW, J., BECK, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: NOVEMBER 1, 2024**

Appellant, Courtney Marie Hontz, appeals from a judgment of sentence imposed for indirect criminal contempt for violation of a Protection from Abuse (PFA) order.  For the reasons set forth below, we reverse Appellant's indirect criminal contempt conviction and vacate the judgment of sentence.

Appellant and her husband Jared Laurell Hontz (Husband), who were in the process of divorcing, filed petitions seeking PFA orders against each other following a confrontation between them on November 29, 2022, at their residence in Shickshinny, Pennsylvania (the Residence).  The trial court granted an *ex parte* temporary PFA in favor of Husband on November 30, 2022, denied Appellant's request for a temporary PFA, and held a hearing on

_____

[*] Retired Senior Judge assigned to the Superior Court.

both PFA petitions on December 6, 2022. At this hearing, Husband testified that the Residence is jointly owned by him and his brother and that on November 29, 2022, Appellant turned off the security cameras in the Residence, chased him around, slammed his hand in a carport door, grabbed him, knocked him down, and injured his arm and knee. N.T., 12/6/22, at 8-13, 23-27. Appellant denied assaulting Husband and testified that Husband hit her during the altercation. *Id.* at 34-45, 51, 53.

On December 6, 2022, following this hearing, the trial court found Husband's testimony credible, denied Appellant's PFA petition, and granted Husband a final one-year PFA order (the PFA Order). N.T., 12/6/22, at 66-67. The PFA Order provided that Appellant "shall not abuse, harass, stalk, threaten, or attempt or threaten to use physical force against" Husband. PFA Order, 12/6/22, at 1-2; N.T., 12/6/22, at 70-71. The PFA Order, however, did not prohibit Appellant from all contact with Husband or order Appellant to vacate the Residence. PFA Order, 12/6/22, at 1-2; N.T., 12/6/22, at 66-67, 70-71. On December 17, 2022, Appellant was charged with indirect criminal contempt for violating the PFA Order by striking Husband with a door when Husband tried to enter the Residence at 10:30 at night on December 9, 2022. Criminal Complaint.

A hearing on the criminal contempt charge was held on January 24, 2023. At this hearing, Husband testified that on December 9, 2022, he discovered that Appellant had changed the locks at the Residence, that he

contacted the state police, and that the state police called him back saying that they had contacted Appellant and that she agreed to give him a key. N.T., 1/24/23, at 23-24. He testified that after he learned this from the state police, he went back to the Residence with his brother and knocked on the door and that Appellant told them to go away. *Id.* at 24. Husband testified that he then went around to the back porch and found an unlocked door and that when he put his hand on the knob of door and began to go into the Residence, Appellant pushed the door closed and locked it, pushing him out of the Residence. *Id.* at 24-25. In response to leading questions from the Commonwealth and the trial court, Husband agreed the door was slammed and that the door hit him but testified that the door did not injure him. *Id.* at 26-28, 35-36. Husband admitted that he was not living at the Residence at the time and testified that he did not understand that what Appellant did violated the PFA Order and did not report a violation of the PFA Order until December 17, 2022, after his supervisor looked at the PFA Order and advised him that the incident violated the PFA Order. *Id.* at 24, 32. He testified that the incident occurred earlier than 10:30 p.m., but that it was dark out. *Id.* at 30-31.

Appellant testified that she was living in the Residence on December 9, 2022, that she only changed the lock on the front door, and that Husband had a key to the back door. N.T., 1/24/23, at 37, 42-43. Appellant denied that

- 3 -

she slammed the door and testified that she put her hand over the door and did not let Husband enter because it was late at night. *Id.* at 44-45.

At the close of the hearing, the trial court found Appellant in contempt of the PFA Order. N.T., 1/24/23, at 46; Indirect Criminal Contempt Order, 1/24/23. At the Commonwealth's request, the trial court held imposition of any sentence in abeyance with instruction to Appellant to vacate the Residence within 45 days and advised Appellant that if she moved out, it would order the indirect criminal contempt dropped. N.T., 1/24/23, at 41, 46-47; Indirect Criminal Contempt Order, 1/24/23. At the sentencing hearing on April 25, 2023, it was represented that Appellant had vacated the Residence and that there were no further violations of the PFA Order, and the trial court sentenced Appellant to pay a fine of $300. N.T., 4/25/23, at 4, 13-16; Indirect Criminal Contempt Order, 4/25/23. Appellant filed a timely post-sentence motion, which the trial court denied on May 30, 2023. This timely appeal followed.

Appellant presents the following two issues for our review:

1. Did the Commonwealth fail to prove, beyond a reasonable doubt, that the Appellant had notice of the terms of the final PFA order because the terms were neither clear nor unequivocal?

2. Did the Commonwealth fail to prove, beyond a reasonable doubt, that, based on the terms of the final PFA order or the circumstances alleged to substantiate a violation of that order, the Appellant acted with wrongful intent and violated the final PFA order?

Appellant's Brief at 3. In reviewing these issues, we must determine whether the evidence admitted at the contempt hearing, and all reasonable inferences

- 4 -

drawn from that evidence, when viewed in the light most favorable to the Commonwealth as prevailing party, was sufficient to enable the trial court to conclude that the Commonwealth established all of the elements of indirect criminal contempt beyond a reasonable doubt. ***Shaner v. Harriman***, 189 A.3d 1088, 1090 (Pa. Super. 2018).

To establish indirect criminal contempt, the Commonwealth must prove the following four elements: (1) that the court's order was definite, clear, specific, and left no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited; (2) that the defendant had notice of the order; (3) that the act constituting the violation was volitional; and (4) that the defendant acted with wrongful intent. ***Commonwealth v. Baker***, 766 A.2d 328, 331 (Pa. 2001); ***Shaner***, 189 A.3d at 1090; ***Commonwealth v. Felder***, 176 A.3d 331, 334 (Pa. Super. 2017). We agree that the Commonwealth failed to prove that Appellant acted with wrongful intent.

Evidence is sufficient to prove wrongful intent where the Commonwealth shows that the defendant would know that her action was substantially certain to violate the court's order. ***Shaner***, 189 A.3d at 1092; ***Commonwealth v. Wilson***, 227 A.3d 928, 939 (Pa. Super. 2020); ***Commonwealth v. Brumbaugh***, 932 A.2d 108, 111 (Pa. Super. 2007). Where, however, the defendant's volitional act does not clearly violate the language in the court's order, wrongful intent cannot be inferred. ***Shaner***, 189 A.3d at 1092. Thus, wrongful intent has been found where a PFA order specifically prohibited the

defendant from posting any remarks regarding the plaintiff on social media and the defendant made social media posts that clearly referred to the plaintiff, **Commonwealth v. Lambert**, 147 A.3d 1221, 1223-24, 1227 (Pa. Super. 2016), and where a PFA order prohibited the defendant from contacting the plaintiff or from having any contact with the plaintiff and the defendant telephoned the plaintiff or got into a car with the plaintiff. **Wilson**, 227 A.3d at 932, 939; **Brumbaugh**, 932 A.2d at 110-11. In contrast, where the terms of the order did not clearly prohibit the intentional act that the defendant committed or clearly advise the defendant of what he was required to do, this Court has held that wrongful intent was not proved and has reversed the contempt conviction. **Shaner**, 189 A.3d at 1089-92 (wrongful intent not shown where defendant's conduct consisted of his use of a shed owned by another person in which a rifle was found, there was no evidence that the rifle was defendant's or that defendant ever handled it, and conduct that protective order prohibited was possession of firearms, not access to any place where a firearm was present); **Diamond v. Diamond**, 715 A.2d 1190, 1198 (Pa. Super. 1998) (wrongful intent not shown with respect to defendant's failure to produce documents where the order "provided no clear guidance as to the type and manner of documents to be produced").

Here, the PFA Order only provided that Appellant "shall not abuse, harass, stalk, threaten, or attempt or threaten to use physical force against" Husband. PFA Order, 12/6/22, at 1-2. No other conduct was prohibited, and

the trial court described the PFA Order to Appellant as a "no hit" PFA order. N.T., 12/6/22, at 66-67, 70. In addition, the trial court made clear to both Husband and Appellant that the PFA Order did not address use and occupancy of the Residence and specifically rejected husband's request that the order prohibit Appellant from living there. *Id.* at 67-70.

The volitional conduct of Appellant that the Commonwealth proved at the contempt hearing consisted of Appellant forcefully closing a door to prevent Husband, who was not living at the Residence at the time, from entering at night. N.T., 1/24/23, at 24-31. This evidence showed only that Appellant's intent was to close the door and prevent Husband from entering the Residence, not to strike him with the door or with anything else or to abuse or assault him, and no other evidence was introduced showing that Appellant intended to hurt Husband. Although the mere fact that her intent was to close the door would not negate wrongful intent if Appellant had done so in a way designed to hurt Husband, *Felder*, 176 A.3d at 333-34 (rejecting claim that wrongful intent was not shown because defendant's intent was to lock a door where defendant did so by grabbing the plaintiff's hand and twisting her fingers until they were painful and swollen), the record does not support a conclusion that Appellant closed the door in a way that was likely to hurt Husband. Husband's testimony that the door hit him was that he was pushed out of the Residence while his hand was on the door, not that the door was flung into him or closed on a part of his body, and he testified that he was

not injured at all. N.T., 1/24/23, at 24-25, 35-36. Indeed, it is clear from Husband's testimony that his complaint concerning Appellant's conduct was that she was denying him access to the Residence, not that she was abusing, threatening, or using force against him. *Id.* at 15-19, 23-29.

Moreover, the PFA Order was sufficiently unclear as to whether it prohibited forcefully closing a door to keep Husband out of the Residence that Husband himself admitted that he did not believe at the time that Appellant's actions violated the PFA Order. N.T., 1/24/23, at 32. Because the Commonwealth showed only that Appellant acted to exclude Husband from the Residence and not to hurt him and Husband, who had the same knowledge of the PFA Order as Appellant, did not understand that Appellant's conduct violated its terms, it could not be concluded beyond a reasonable doubt that Appellant acted with wrongful intent.

For the foregoing reasons, we conclude that the Commonwealth failed to prove all the elements of indirect criminal contempt. We therefore reverse Appellant's conviction of indirect criminal contempt and vacate the fine imposed by the trial court.

Order of contempt reversed. Judgment of sentence vacated.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/01/2024